UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA,

        Plaintiff,               Case No.: 00-6343-CR-ZLOCH

v.

TAMEKA JOHNSON,

        Defendant.
_____/

## MOTION FOR DOWNWARD DEPARTURE

COMES NOW the Defendant, TAMEKA JOHNSON, by and through undersigned counsel, and pursuant to U.S.S.G. § 5K2.20, files this her Motion for Downward Departure, and in support thereof states as follows:

1. On April 12, 2001, TAMEKA JOHNSON was convicted of one count of conspiracy to distribute at least five kilograms of cocaine, at least fifty grams of crack cocaine and a quantity of marijuana, in violation of 21 U.S.C. § 846. She was acquitted of the possession count.

2. The guideline imprisonment range for the Defendant is 121 to 151 months, based upon a total offense level of 32 and a criminal history category of I. She has been given adjustments as a minimal participant under U.S.S.G. § 3B1.2 and safety valve under U.S.S.G. § 5C1.2, bringing her within a guideline range of 78 to 91 months.

3. The Sentencing Guidelines allow for the imposition of a sentence below the applicable guideline range "in an extraordinary case if the defendant's criminal conduct constituted aberrant behavior". U.S.S.G. § 5K2.20.

112

4.  The guidelines define aberrant behavior as "...a single criminal occurrence or single criminal transaction that (A) was committed without significant planning; (B) was of limited duration; and (C) represents a marked deviation by the defendant from an otherwise law-abiding life." Commentary, U.S.S.G. § 5K2.20.

5.  TAMEKA JOHNSON, age 22, was born in Jamaica and legally immigrated to the United States at the age of fifteen. Ms. Johnson has resided primarily with her aunt and uncle in Florida since that time. Ms. Johnson's aunt and uncle both work and own a single-family residence in Miami. (See PSI, paragraphs 47-48).

6.  In 1999, Ms. Johnson graduated from North Miami Beach Senior High School with a cumulative grade point average of 2.326. Ms. Johnson also attended Florida Metropolitan University in Fort Lauderdale, and had completed 28 credit hours there as of October, 2000.

7.  Throughout her high school and undergraduate studies, Ms. Johnson also worked part-time as a restaurant cashier in order to contribute to her educational expenses. At the time of her arrest, Ms. Johnson was working full-time as a cashier at the Fort Lauderdale/Hollywood International Airport. Ms. Johnson is described as a "nice person and average employee". (See PSI, paragraph 59).

8.  Previous to this matter, Ms. Johnson had never been arrested before. Furthermore, Ms. Johnson has had no disciplinary incidents in either her educational or employment background. She has absolutely no history of drug or alcohol abuse.

9.  Ms. Johnson has always filed her yearly tax returns, and owns no significant assets.

10.   In November of 1999, Ms. Johnson began a romantic relationship with Mosi Grant, a co-defendant herein, with whom she had attended high school in Jamaica. Ms. Johnson did not believe or suspect that Mr. Grant was involved in any illegal or nefarious activities. Mr. Grant, who resided in South Carolina at the time, told Ms. Johnson that he worked as a printing company representative and traveled to Miami frequently on business.

11.   In February of 2000, Ms. Johnson and Mr. Grant decided to move in together. Thereafter, they drove to South Carolina in order to move Mr. Grant's personal belongings and furniture to Miami. While in South Carolina, Ms. Johnson met Yvette Jenkins, Lindon Johnson and others at the residence of Lindon Johnson. At no time during this trip did TAMEKA JOHNSON see any drugs present. Further, Ms. Johnson neither knew of, nor heard anyone else refer to, any illegal drug activity whatsoever. (See Factual Objections to Presentencing Investigation, ¶3).

12.   In February of 2000, TAMEKA JOHNSON saw Yvette Jenkins and Lindon Johnson only briefly while they were in Miami. TAMEKA JOHNSON never purchased any cleaning solutions at Walgreens at this time <u>for any purpose whatsoever</u>. (See Factual Objections to Presentencing Investigation, ¶1).

13.   During that same time, co-defendant Lindon Johnson asked TAMEKA JOHNSON to make hotel and train reservations for a friend of Lindon Johnson. TAMEKA JOHNSON did so, without realizing that the reservations were for individuals transporting illegal drugs.

14.   Yvette Jenkins and TAMEKA JOHNSON never discussed the topic of any money that Ms. Johnson would make from the drug run. (See Factual Objections to the

Presentencing Investigation, ¶2). Yvette Jenkins did inform TAMEKA JOHNSON, however, that Lindon Johnson was involved in the sale of illegal drugs and that Yvette Jenkins was doing a "favor" for him (Johnson).

15.  Immediately upon discovering the true nature of Mosi Grant's activities, TAMEKA JOHNSON ended her relationship and association with him. Nevertheless, TAMEKA JOHNSON was ultimately arrested and charged herein.

16.  The Presentence Investigation Report states that TAMEKA JOHNSON is "the least culpable member of the conspiracy". (See PSI, ¶28). TAMEKA JOHNSON became "involved" in the above activities unwittingly and only peripherally, at best, through her association with Mosi Grant. TAMEKA JOHNSON never thought for a moment that making travel reservations for Lindon Johnson's friend were for the purposes of facilitating any illegal activities.

17.  While Ms. Johnson may have been naïve about the activities of Mosi Grant, she should not be unduly punished for being too trusting. Ms. Johnson terminated her involvement with Mosi Grant upon discovering the true nature of his "business". Furthermore, Mosi Grant testified at trial and upon information and belief, at his sentencing, that TAMEKA JOHNSON had no knowledge of, or involvement with any drug transactions.

18.  TAMEKA JOHNSON meets the criteria for a downward departure pursuant to U.S.S.G. § 5K2.20 for "aberrant behavior". Previous to her arrest and conviction herein, Ms. Johnson lived as a law-abiding young woman. She has exhibited a strong work ethic and a desire to advance educationally as well. She should not be

unduly or disproportionately punished for placing her heart and her trust in the wrong person.

WHEREFORE, for the above stated reasons, the Defendant respectfully requests that this Honorable Court grant the herein Motion for Downward Departure, along with such other relief as this Court may deem just and proper.

Respectfully submitted,

Emmanuel Perez, Esquire
2121 Ponce de Leon Blvd.
Suite 920
Coral Gables, FL 33134
Phone (305) 442-7442
Fax (305) 441-9218
Florida Bar No.: 786552

5

### *CERTIFICATE OF SERVICE*

I HEREBY CERTIFY that a true and correct copy of the above and foregoing was mailed to Dana Washington, AUSA, 500 East Broward Boulevard, 7th Floor, Ft. Lauderdale, FL 33394 and Edward L. Cooley, US Probation Officer, 299 East Broward Boulevard, Room 409, Ft. Lauderdale, FL 33301-1168 on this 26th day of June, 2001.

Emmanuel Perez, Esquire
FBN: 586552
2121 Ponce De Leon Blvd.
Suite 920
Coral Gables, FL 33134
(305)442-7442